UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

In re
Jeffrey Wayne Mathews,                                    Case No. 09-26463-svk
                            Debtor.

Estate of James B. Sustache, et al.,

                    Plaintiffs,                           Adv. Proc. No. 09-2317

v

Jeffrey Wayne Mathews,

                    Defendant.

## MEMORANDUM DECISION DETERMINING DISCHARGEABILITY OF DEBT

This case involves the tragic loss of a young man's life at a teenage drinking party. After being taunted and shoved, Jeffrey Mathews (the "Debtor") punched James B. "Nino" Sustache exactly one time. Nino fell to the ground, struck his head, and died about two weeks later. Nino's family sued the Debtor and his family, who brought a claim against their homeowner's insurance. The coverage issue went to the Wisconsin Supreme Court which ruled in favor of the insurance company. *See Estate of Sustache v. Am. Family Mut. Ins. Co.,* 2008 WI 87, 311 Wis. 2d 548, 751 N.W.2d 845.

His resources exhausted, the Debtor filed a Chapter 7 bankruptcy petition on May 6, 2009. Nino's estate and his parents filed a Complaint alleging that their claim against the Debtor was nondischargeable in bankruptcy as a willful and malicious injury pursuant to Bankruptcy Code § 523(a)(6). The parties stipulated that this Court would first determine the

nondischargeability issue, and, if the debt was excepted from the discharge, the case would return to the state court for liquidation of the damages.

In a two-day trial, the Court considered the testimony of fourteen witnesses, including Plaintiffs' witnesses who were present at the encounter and maintained that Nino was attempting to walk away from the fight he instigated. The Debtor and his witnesses testified that after Nino challenged the Debtor to a fight, the Debtor and his friends came to the party where Nino taunted the Debtor, called him names and pushed him. The Debtor struck Nino once in a reaction to the push, and left after Nino fell down. The Debtor expressed sincere remorse for Nino's death, and said that he never intended to mortally injure Nino. The sole exhibit admitted during trial was Plaintiffs' Exhibit 1 – the Statement given to the police by Thomas Nye, dated January 13, 2005. The Statement of Ryan Koessl dated January 3, 2005 was offered as an exhibit but was not admitted over the Debtor's objection, based on Mr. Koessl's alleged inability to remember giving the Statement or anything relating to the incident.

At the conclusion of the trial, the Court held that the Debtor's actions were willful, but took the question of whether his conduct was malicious under advisement. The parties filed briefs, and the Court now issues this Memorandum Decision, which constitutes the Court's findings of fact and conclusions of law under Bankruptcy Rule 7052.

**FACTS**

On New Year's Eve in 2004, the Debtor was a 16-year old sophomore at Bradford High School in Kenosha, and was working at a Wendy's restaurant. He and some friends from Bradford planned to get together later in the evening to play poker. While still at work, the Debtor began to receive harassing telephone calls from an unknown phone number. The person on the other end of the phone, who identified himself as Nino, called the Debtor names,

2

threatened him and challenged him to a fight.  The phone calls revolved around the Debtor

allegedly being involved with a girlfriend of Nino's friend, Ryan Koessl.  The girl, Nino and Mr.

Koessl were students at rival Tremper High School in Kenosha.  It was clear to the Debtor that

the caller was at a party, and the Debtor testified that Nino gave him the address of the party, and

encouraged him to come to fight.  Other witnesses confirmed that Nino was intoxicated,

telephoned the Debtor and told the Debtor to come over to fight.

The Debtor arrived at the party with five or six friends.  There were forty to fifty Tremper

students gathered outside the house where the party was held, including Nino.  The Debtor asked

for Nino, and he identified himself.  A crowd of Tremper kids formed around the Debtor and

Nino, and began yelling for a fight.  Someone yelled, "The cops are coming," and some in the

crowd started running away, including the Debtor's friends from Bradford.  However, a large

group of intoxicated teenagers remained, and were "egging on" the Debtor and Nino to fight.

The Debtor testified that he heard Nino's friends encouraging Nino to hit him, and that

Nino was yelling at him that he would "beat his ass" and calling him "faggot," "pussy" and

worse.   The Debtor stated that he was afraid that if he left the confrontation, he would be

jumped.  The Debtor testified that Nino lifted up his shirt and showed his "abs" to intimidate the

Debtor.  The Debtor took off his shirt in response.  The Debtor testified that Nino had his hands

in the air, and his friends were yelling at him, and then Nino shoved the Debtor "right in my

chest."  The Debtor stumbled back, then came forward with a closed-fist punch which landed on

the side of Nino's face.  Nino fell to the ground and did not get up.  Nino's friend, David Kelsch,

then punched the Debtor, and he fell to the ground.  The Debtor got up and ran away.  The whole

incident was over in a matter of seconds.

3

Nino's friends began shaking him to revive him, and one witness testified that he saw Nino's friends trying to carry him to a car, and heard one of them say, "Oh shit, we dropped him." However, he did not see Nino's friends drop him, and one of the individuals who carried Nino to the car denied doing so. On January 11, 2005 Nino died from his injuries. The Debtor was not charged in adult court for his actions.

## ANALYSIS

Section 523(a)(6) of the Bankruptcy Code provides that "a discharge . . . does not discharge an individual debtor from any debt . . . for willful and malicious injury by the debtor to another entity or the property of another entity." The creditor bears the burden of proof by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 287 (1991). The debtor bears the burden of proving the elements of affirmative defenses. *Kleman v. Taylor (In re Taylor)*, 322 B.R. 306 (Bankr. N.D. Ohio 2004). Exceptions to discharge are construed narrowly against the creditor and liberally in favor of the debtor. *Kolodziej v. Reines (In re Reines)*, 142 F.3d 970, 972 (7th Cir. 1998).

The Supreme Court defined "willful" as an act done with the actual intent to cause injury, as opposed to an act done intentionally which causes injury. *Kawaauhau v. Geiger*, 523 U.S. 57, 61 (1998). "[T]he § 523(a)(6) formulation triggers in the lawyer's mind the category 'intentional torts,' as distinguished from negligent or reckless torts. Intentional torts generally require that the actor intend the consequences of an act, not simply the act itself." *Id.* (internal citations and quotations omitted). Applying this standard, at the close of the evidence, the Court ruled that the Debtor's conduct was willful, and took under advisement the issue of whether the Debtor's conduct was malicious.

4

Section 523(a)(6) does not define "malicious," and the Supreme Court has not expressly addressed the term in this context. The Seventh Circuit Court of Appeals has stated that malice involves acting in "conscious disregard of one's duties or without just cause or excuse." *In re Thirtyacre*, 36 F.3d 697, 700 (7th Cir. 1994) (*citing Wheeler v. Laudani*, 783 F.2d 610, 615 (6th Cir. 1986)). Self-defense can constitute a justifiable excuse for a defendant's actions and negate a claim of malice. *Kleman*, 322 B.R. at 309 ("Acts properly taken, therefore, in self-defense provide a valid defense to an action brought under § 523(a)(6)"). The *Kleman* court recognized that there is no federal authority on the issue of self-defense as a defense to a nondischargeability claim, and looked to state law for guidance. *Id.* at 309-10.

In Wisconsin, self-defense is a privilege to "use force against another for the purpose of preventing or terminating what the person reasonably believes to be an unlawful interference with his or her person by such other person." Wis. Stat. § 939.48(1) (2005). If a defendant reasonably believes his life is in danger or that he is likely to suffer great bodily harm, then he has a right to stand his ground and defend himself in such a way and with such force as he reasonably believes is necessary under the circumstances to save his life or protect himself from bodily harm. *Crotteau v. Karlgaard,* 48 Wis. 2d 245, 249, 179 N.W.2d 797, 799 (1970). Reasonableness is not defeated if it is later determined that the defendant's beliefs were mistaken. *Maichle v. Jonovic,* 69 Wis. 2d 622, 230 N.W.2d 789 (1975).

When determining whether the defendant's beliefs as to imminent danger were reasonable, the standard is what "a person of reasonable intelligence and prudence would have believed in the defendant's position under the circumstance that existed at the time of the alleged offense. The reasonableness of the defendant's beliefs must be determined from the standpoint of the defendant at the time of the defendant's acts." *State v. Navarro*, 2001 WI App 225, ¶ 12, 248

5

Wis. 2d 396, 404, 636 N.W.2d 481, 486. And the reasonableness of children's beliefs is judged in relation to children of like age, intelligence and experiences. *Maichle*, 69 Wis. 2d at 627-28, 230 N.W.2d at 793. Here, the Debtor's actions and beliefs must be compared to those of a reasonable 16 year old.

Plaintiffs concede that the Debtor's actions must be judged in comparison with individuals of similar age, but argue that when comparing the Debtor to the other children at the party, the Debtor's actions were not reasonable. Plaintiffs base this claim on the testimony of Rachel Nudi, who testified that she suggested that another friend from Bradford not attend the party in the first place. However, the reasonableness determination must be made at the time of the Debtor's act, i.e., the punch, not earlier in the evening. The Plaintiffs also contend that since other children at the party ran with the announcement of "Cops," the Debtor should reasonably have done the same. But not all of the children ran at the announcement that the police were coming, and the Plaintiffs' argument ignores the undisputed testimony that the Debtor and Nino were surrounded by a crowd of drunken Tremper students who were egging on the fight.

From the Debtor's view, the one which must be consulted, he was harassed, taunted and challenged to a fight. He was given an address and arrived with a small group of friends to find a large, intoxicated mob of students from the rival high school, inciting the Debtor and Nino to fight "one on one." When someone yelled, "Cops!" the Debtor's friends ran away.

The Debtor testified that Nino was very intoxicated, called him names, and lifted his shirt in a challenge. Although the Plaintiffs' witnesses denied seeing Nino lift his shirt, most of those witnesses were admittedly intoxicated at the time, and their testimony was contradictory. For example, Nino's friend Adam Kelsch stated that he was standing near Nino during the confrontation with the Debtor, and Nino did not want to fight the Debtor. However, he admitted

6

that Nino came out of the basement when he learned that the Bradford kids had arrived. He testified that nobody wanted a fight, but admitted that the crowd was yelling "one on one." Only one witness who denied that Nino lifted his shirt was not drinking that night. Andrew Allemand gave an account that differed in many respects from all of the other witnesses. He stated that Nino had just apologized to the Debtor and was talking to the crowd when he was hit. He described the crowd as mumbling at the time Nino was punched; then he stated they were all yelling. He could not remember what the Debtor said, but he could remember Nino's words of apology and conciliation.

The Debtor (who also was not drinking) and all of his witnesses who were at the party testified that Nino lifted his shirt in a taunting and intimidating manner. Rachel Nudi's testimony in this regard was especially compelling. Nino had told her in the basement that her "boy was running his mouth, and there's going to be a fight." When they went outside, she saw Nino and Jeff facing each other, with some in the mob yelling "one on one" and "make it a fair fight." She testified without hesitation that Nino lifted his shirt. This gesture is an unusual one for the Debtor and his witnesses to invent. The Court finds the Debtor's and his witnesses' version of this part of the confrontation more credible than the account of the Plaintiffs' witnesses. Although not finding that Mr. Allemand and his friends were lying about what they remember from that night, the Court believes their memories are slanted by the desire to protect and honor their dead friend.

After Nino lifted his shirt, and the Debtor removed his, the two were yelling at each other, and the Debtor said that Nino's friends were encouraging him to fight when Nino pushed the Debtor. The Debtor reacted by punching Nino once in the side of the face. The Debtor testified that he feared for his safety from the unruly crowd, who everyone agreed was yelling and

7

encouraging the fight. Under the circumstances, surrounded by a large hostile crowd of drunken teenagers from a rival high school, having been taunted and pushed, and hearing the crowd incite Nino to hit him, the Court finds that a 16-year old would reasonably believe that his life was in danger or that he would suffer grave bodily harm if he did not strike. That he struck only one blow is evidence of the reasonableness of the response. He did not attack or kick Nino when he was down, and instead had started to back away when Nino's friends chased and punched him.

The *Maichle* case involves boys who got into a fight after a pattern of harassment that escalated to a verbal confrontation, and led to the defendant striking the plaintiff. *Maichle,* 69 Wis. 2d 622. As in this case, the accounts of the actual fight varied among the witnesses. The jury found that the defendant acted in self-defense, but the trial court rejected the jury's finding. The Wisconsin Supreme Court reversed, finding that when the plaintiff followed the defendant off the bus, there was an appearance of an overt act to carry out the plaintiff's threats, which when combined with the parties' past interactions, gave rise to the defendant's reasonable belief of imminent bodily harm. *Id.* at 630.

Similarly, the Debtor reacted to a shove which was preceded by a pattern of harassment, through phone calls made by Nino and his friends to the Debtor, and the verbal abuse heaped on the Debtor during the confrontation with Nino. When the Debtor heard Nino's friends incite Nino to hit him and Nino shoved him, the Debtor's reaction was in response to a reasonable belief that bodily harm was imminent, much like the defendant in *Maichle*.

The Bankruptcy Court in Ohio analyzed a self-defense claim in a similar context. In *Kleman v. Taylor*, the plaintiff and defendant were at a party where underage drinking was occurring, when the defendant started an argument with the plaintiff. Sometime later, the plaintiff pushed the defendant, and the defendant punched the plaintiff, causing serious injuries.

8

*Kleman*, 322 B.R. at 306-07.  Although the Bankruptcy Court found the plaintiff's damages claim nondischargeable, the case is distinguishable both on its facts (Nino was the initial aggressor here, having taunted the Debtor and challenged him to the fight), and more importantly with respect to the applicable state law.  Under Ohio law, there is a general duty to retreat.  The *Kleman* court stated:  "Nor, was there any evidence that the Defendant was pushed into a location where a general withdraw from the area could not be safely accomplished; to the contrary, by the Defendant's own account of events, after being pushed from behind, his momentum led him to an area where egress from the Plaintiff's property was made even more accessible." *Id.* at 310.  The court concluded:  "Under such circumstances, Ohio law imposes upon a person a general duty to retreat, the only exception being if the assault occurs in one's home or business." *Id.*  In Wisconsin there is no such duty to retreat, instead the defendant is allowed to stand his ground and defend himself if necessary. *See State v. Herriges*, 155 Wis. 2d 297, 455 N.W.2d 635 (Ct. App. 1990).  The facts in *Kleman* are distinguishable, and the law on the duty to retreat is different in Wisconsin than Ohio.  Therefore the *Kleman* court's determination of nondischargeability is not persuasive in this case.

Plaintiffs rely on *In re Thirtyacre*, arguing that the Debtor's actions were malicious due to their deliberate nature.  In *Thirtyacre,* the Seventh Circuit held that the debtor's actions were willful and malicious and that he had no valid defense. *Thirtyacre*, 36 F.3d at 701.  The debtor went from place to place searching for his wife's suspected boyfriend, kicking in the door of a residence where the boyfriend was expected to be, and threatening the boyfriend over the phone. *Id.* at 699.  He learned that the boyfriend was at the plaintiff's house, drove there and struck her when she told him to leave her property. *Id.*  The Court of Appeals found the debtor's conduct willful, since he had "plenty of time to deliberate" before committing the intentional battery on

9

the plaintiff. *Id.* at 700. The debtor argued that his drunkenness and medication for depression negated the malicious prong of § 523(a)(6), but the court rejected his argument as unsupported by the evidence, and declared the debt nondischargeable.

*Thirtyacre* is easily distinguishable from this case. The debtor in *Thirtyacre* was expressly found to have no just cause or excuse for his behavior: "Thirtyacre was sober enough to operate a car, sober enough to plan a confrontation, sober enough to track and eventually find Brokaw, sober enough to argue with Brokaw." *Id.* at 701. Here, the Debtor's just cause or excuse is the doctrine of self-defense. Having determined that the elements of this defense were proven by the Debtor – in sharp contrast to the debtor in *Thirtyacre* who did not prove any excuse or justification -- the Debtor's conduct was not malicious as described by the Statute. This case is more comparable to *In re Dilley*, 25 B.R. 179 (Bankr. W.D. Wis. 1982), in which the debtor was found to have acted in self-defense as defined by Wisconsin law, and the debt for the injuries he caused was dischargeable.

**Conclusion**

This case involves a tragedy of immense proportions. The sympathy of the Court is clearly with Nino's parents who have lost their son. But the law allows a proper claim of self-defense to provide an excuse for an otherwise willful and malicious act, and thus a defense to a nondischargeability claim.

In analyzing the Debtor's claim of self-defense, the Court recognizes the conflicting testimony of the young people who attended the party that night. Nino's friends testified that he did not want to fight, and that Nino was trying to pull back and explain to the Debtor that the phone calls were all a "misunderstanding," when the Debtor drew back and hit him with a "sucker punch." The Debtor and his witnesses testified that Nino was extremely intoxicated, and

10

was harassing, taunting and challenging the Debtor to a fight when Nino pushed the Debtor. The Debtor said that Nino's friends were yelling for Nino to hit him, and he was afraid he would get "jumped" if he tried to turn away. After being pushed, he reacted by punching Nino one time in the face. In the credibility dispute, the Court sides with the Debtor. Nino's friends' memories of that evening and their testimony are understandably colored by their personal allegiance to him. Moreover, almost all of Nino's friends who testified admitted to drinking that evening, and they admitted that Nino was also drunk. The entire incident was over in seconds, and the Court finds as a fact that the Debtor and his witnesses' testimony concerning the confrontation is the credible version of what happened.

Accepting that version of events, and judging the Debtor's beliefs and conduct in comparison to what a reasonable 16-year old would believe, the Court finds that the Debtor reasonably believed that his life was in danger or that he was likely to suffer great bodily harm, and that the Debtor's striking Nino with one punch was an act that he reasonably believed was necessary to save his life or protect himself from bodily harm. Therefore, the Debtor's conduct was not malicious as required for a determination of nondischargeability under Bankruptcy Code § 523(a)(6). An Order will be entered dismissing the Plaintiffs' Complaint.

Date: August 20, 2010

By the Court:

Susan V. Kelley
U.S. Bankruptcy Judge

11